**STATE of Minnesota, Respondent,**

v.

**Douglas Paul PIERCE, Appellant.**

No. A09–2210.

Court of Appeals of Minnesota.

Dec. 7, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by JOHNSON, Chief Judge; ROSS, Judge; and CRIPPEN, Judge.*

## OPINION

ROSS, Judge.

This appeal requires us to decide whether Hennepin County was the proper venue for the state to prosecute Douglas Pierce for violating an order for protection by sending a message electronically to his former girlfriend. The state charged Pierce in Hennepin County with violating the Domestic Abuse Act, Minn.Stat. § 518B (2008), and the district court found him guilty after a bench trial. We hold that venue under the act is appropriate either in the county from which the sender e-mailed the message or the county in which the recipient opened it, but we also hold that the trial evidence was insufficient to support venue in Hennepin County on either basis. We therefore reverse.

## FACTS

In February 2008 the district court granted Wenona Kuhrman's request for an order for protection (OFP) in Hennepin County against Douglas Pierce, the father of her two children, after Pierce assaulted her. One year later, while Pierce was incarcerated for violating that order, the district court extended it for an additional five years. The order required that Pierce have no contact "of any sort" with Kuhrman. It expressly prohibited Pierce from making any contact with Kuhrman in person, by telephone, by letter, by third party, or by any electronic means, including e-mail.

But soon after being released from prison, Pierce sent an e-mail message to Kuhrman from his MySpace.com account. The message included Pierce's photograph and full name. The subject line read, "Why," and the text read, "Why fred mike 3925 1 st duplex nice chat lines i thought it was me & u it was me u and every one i wa u can send me back i do not care i got nothing with out u." Kuhrman interpreted Pierce's message as stating that, by send-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ing it, Pierce had violated the OFP and could be returned to prison. Kuhrman reported the message to police, who investigated, and the state filed a criminal complaint in Hennepin County alleging that Pierce had again violated the OFP.

The evidence at trial did not establish where Pierce was when he sent the message. The printed version of the message indicated only that Pierce sent it at 11:40 p.m. on March 5, 2009. The evidence also established that the day after Pierce sent it, Kuhrman contacted Pierce's probation officer and called the police. Kuhrman did not testify as to where or when she first read the message. She did not specify which police department she called. She forwarded Pierce's message to the probation officer and the county attorney, but she did not testify to where she was when she did this. Kuhrman testified that the police officer "opened up" her computer, that she showed him the message, and that he gave her a card with a telephone number of an investigator, whom he directed her to call. But she did not testify where she was when she spoke with the officer. The state did not call any investigating officer to testify or introduce any evidence of Pierce's or Kuhrman's locations when they sent or opened the message.

The district court made no finding as to Pierce's location when he sent the message. But it construed Kuhrman's testimony as stating that Kuhrman received the e-mail "on her computer which is located in her home," and it accepted this construed testimony as fact. Pierce appeals, challenging this finding and the district court's consequent determination that his trial was appropriately venued in Hennepin County.

## ISSUES

I. Did the district court properly refuse to limit venue to the e-mail's county of origin?

II. Did the state prove that the e-mail was either sent from or received in Hennepin County?

## ANALYSIS

■ Pierce argues that the evidence was insufficient to convict him because it failed to establish the element of venue in Hennepin County. When considering a claim of insufficient evidence, we examine the record to determine whether the evidence, considered in the light most favorable to the conviction, could reasonably support the verdict. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004). Evidence is sufficient to support a guilty verdict if, based on it, the factfinder could reasonably conclude that the defendant was guilty of the charged offense. *Davis v. State*, 595 N.W.2d 520, 525 (Minn.1999). A defendant is guilty of the charged offense only if the state has proven each of its elements beyond a reasonable doubt. *In re Winship*, 397 U.S. 358–61, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970). A defendant has a constitutional right to be prosecuted in "the county or district wherein the crime shall have been committed," Minn. Const. art. I, § 6, and this right has been codified as an essential element of every criminal offense, Minn. Stat. § 627.01 subd. 1 (2008). So the state must prove beyond a reasonable doubt that the charged offense "was committed" in the county where the case is being tried. This specifically includes the county "where any element of the offense was committed." *Id.*, subd. 2; *see State v. Eibensteiner*, 690 N.W.2d 140, 150 (Minn. App.2004), *review denied* (Minn. March 15, 2005).

Pierce offers two theories for his argument that the trial evidence does not support his conviction. He contends that when a person sends an electronic commu-

nication that allegedly violates an OFP issued under the Domestic Abuse Act, venue for his prosecution is proper only in the county from which he sent the communication. He therefore argues for reversal on the ground that the state introduced no evidence that he e-mailed his message to Kuhrman from Hennepin County. Pierce contends alternatively that even if venue also lies in the county in which the recipient received an OFP-violating e-mail, the state introduced insufficient evidence to prove that Kuhrman received Pierce's e-mailed message in Hennepin County.

## I

■ We reject Pierce's argument that venue is proper only in the county from which an alleged OFP violator sent the offending e-mail. Pierce bases his argument on Minnesota's jury instruction guidelines naming the elements of an OFP violation, including that the "defendant's act took place" in the charging county. *See* 10 Minn. Prac. Series, CRIM JIG 13.54 (5th Ed.) (providing model jury instructions for violation of an order for protection). He reasons that because a defendant violates an OFP simply by the single "act" of sending an offending e-mail, as the guideline suggests, his sending the e-mail completed the crime and therefore limits the venue for its prosecution to the county from which he sent it.

■ Pierce's venue argument fails because it both overemphasizes and misapplies the jury instruction guidelines. The argument as to proper venue raises a question of law, which we review de novo. *See In re Collier*, 726 N.W.2d 799, 803 (Minn.2007). Pierce overemphasizes the guidelines because they are not the law; they are merely a committee of the Minnesota District Judges Association's attempt to summarize the law for the convenience of the parties and the trial court. *See*

*Johanson v. State*, 404 N.W.2d 362, 363 (Minn.App.1987) (noting that the committee's criminal jury instruction guide does not always accurately represent Minnesota law). Pierce's reliance on the guidelines as law is therefore misplaced. Pierce also misapplies the cited guideline to contend that its characterization of an OFP violation as an "act" in the singular somehow limits venue to a single county. Just as the jury-instruction guideline for violation of an OFP refers to "the *act*" taking place in the charging county, the venue statute refers to the charged "*offense*" being committed in the charging county. Minn.Stat. § 627.01, subd. 1. Both are written in the singular, so the singular terminology in the guidelines changes nothing. And despite the reference to a singular offense, the statute clarifies that an offense broadly includes any of its elements. *Id.*, subd. 2. So venue for Pierce's offense of violating the OFP is proper in Hennepin County if any element of the offense occurred in Hennepin County.

We hold that the elements of Pierce's offense include both his sending and the receiving of his e-mail. The OFP explicitly prohibited Pierce from making contact with Kuhrman. "Contact" included electronic communication. And communicative "contact," like all contact, occurs when the connection linking the participants is made. The implicit element of Pierce's connection with Kuhrman makes relevant the location where Kuhrman received the e-mail. Pierce is correct that his single act of sending the e-mail was all the action necessary to violate the OFP, but this is because his act of sending it intentionally set in motion the chain of events he designed to complete the connection, which included Kuhrman's act of opening the e-mail. Because Kuhrman's responsive opening was part of Pierce's contact, and therefore also was an element of his of-

fense of violating the OFP, the place of the offense for venue purposes included the county of receipt.

This holding mirrors the settled concept that venue is proper both where a criminal actor's conduct occurs and where the resulting criminal impact occurs. For example, in *State v. Bellfield*, venue for telephone prostitution solicitation was appropriate where the informant received the defendant's calls. 275 N.W.2d 577, 577 (Minn.1978). And the rules provide that "[i]f an act is committed in one county resulting in injury or death in another county, the offense may be prosecuted and tried in either county." Minn. R.Crim. P. 24.02, subd. 3. The district court properly refused to limit venue to the e-mail's county of origin.

## II

■ Having held that venue can depend either on an e-mail sender's location or on the e-mail recipient's location when the state prosecutes the sender for violating an OFP under the Domestic Abuse Act, we must now determine whether the facts allow us to affirm venue for Pierce's Hennepin County prosecution. The state introduced no evidence and offered no argument establishing where Pierce was when he sent his e-mail message. The state therefore failed to prove venue in Hennepin County based on the e-mail's point of origin. So we must decide if the district court properly found that the state proved venue based on its point of receipt.

We searched the trial record, but we uncovered no evidentiary support for the district court's factual finding that Kuhrman received Pierce's e-mail while she was in Hennepin County. We looked first for direct evidence of venue and then for circumstantial evidence. Both are lacking.

The trial record contains no direct evidence establishing that Kuhrman received or opened the e-mail while she was in Hennepin County. The prosecutor never actually asked Kuhrman where she was when she opened the e-mail. The closest the prosecutor came to the question was to assert to the district court that Kuhrman's address appeared in an exhibit and to ask the district court to take notice that Kuhrman's Minneapolis address was in Hennepin County. But Kuhrman's residential address, standing alone, is insufficient to establish venue for the OFP offense under the Domestic Abuse Act that underlies it; as we have discussed, venue depends on the location of an element of the criminal offense. In the somewhat similar circumstance of harassing telephone calls under Minnesota Statutes section 609.79, venue would be proper "either at the place where the call is made or where it is received *or, ... in the case of ... electronic communication, where the sender or receiver resides.*" Minn.Stat. § 609.79, subd. 2 (2008) (emphasis added). The state charged Pierce under section 518B.01, not under 609.79, and section 518B.01 includes no similar residence-based venue extension for violations by electronic communication. Kuhrman's residential address is therefore not direct evidence of proper venue.

In the absence of direct evidence, sufficient circumstantial evidence establishing that Kuhrman received or opened the e-mail while she was in Hennepin County would satisfy the state's burden of proof of venue. Although the state commonly proves venue by direct evidence, we have held that venue might also be proven by circumstantial evidence. *State v. Bahri*, 514 N.W.2d 580, 582 (Minn.App.1994), *review denied* (Minn. June 15, 1994); *State v. Larsen*, 442 N.W.2d 840, 842 (Minn.App. 1989).

■ Circumstantial evidence, however, receives a more exacting appellate re-

view than direct evidence. Although circumstantial evidence merits the same weight as direct evidence, *State v. Bauer*, 598 N.W.2d 352, 370 (Minn.1999), we scrutinize more strictly convictions that depend on circumstantial evidence, *State v. Jones*, 516 N.W.2d 545, 549 (Minn.1994). So in circumstantial-evidence cases, the evidence "must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Taylor*, 650 N.W.2d 190, 206 (Minn.2002). We look both at "whether the inferences leading to guilt are reasonable" and whether "there are no other . . . rational inferences that are inconsistent with guilt." *State v. Andersen*, 784 N.W.2d 320, 330 (Minn.2010) (quotation omitted). And we give "no deference to the fact finder's choice between reasonable inferences." *Id.* at 329–30.

On that exacting review of the circumstantial evidence here, we conclude that the record lacks sufficient evidence to support the district court's finding of venue in Hennepin County. Given that Kuhrman offered no specific testimony about her location when she opened the e-mail message, the district court's specific finding that "the testimony of Ms. Kuhrman established that she received the message on her computer which is located in her home" must depend on circumstantial evidence. The state offers two unconvincing arguments to support its proposition that the circumstantial evidence introduced at trial proved venue beyond a reasonable doubt.

The state first contends that Kuhrman must have first opened the MySpace e-mail at her home because she maintained the MySpace account primarily for her children's use. The state's contention is unpersuasive for at least four reasons.

First, Kuhrman never actually testified that her children's MySpace access was the reason the computer was in her home; her testimony was only, "I have it there for my kid. So, yeah, I know how to check my e-mails." The state's characterization of Kuhrman's testimony stretches the record beyond necessary inferences. Second, the district court made no finding like the one the state has suggested. And given our limited role on appeal—especially our greater scrutiny of circumstantial evidence—we are not inclined to infer the proffered fact. Third, to the extent we might in some cases infer findings based on uncontested facts in the record that lead to only one logical conclusion, we would certainly not infer the suggested finding here because the state's construction of Kuhrman's motive is facially implausible. The state describes the supposed young MySpace users as Kuhrman's "preschool aged children." The state's proposition that Kuhrman accessed the MySpace message from her home because, her near-toddlers engage in online social networking there does not pass the can-you-say-that-with-a-straight-face       test. And fourth, the state's contention fails because even if Kuhrman's MySpace account was primarily for her preschoolers' use, the record contains no evidence to support the finding—to the exclusion of any reasonable alternative finding—that Kuhrman therefore opened Pierce's e-mail at her home.

█   The other bits of circumstantial evidence are too random to point only to the possibility that Kuhrman opened the e-mail at home. The record suggests that her computer may have been portable rather than stationary:

Q.   Did the police officer open up your computer? Did you show him the message?

A.   Yes.

One generally "opens up" a laptop computer, but not a stationary computer. And the state has implicitly recognized the portability of Kuhrman's computer by arguing for the "strong inference" that Kuhrman accessed her MySpace account from her home rather than at "an internet café." That Kuhrman called the police also adds little to the state's position. The record contains no evidence, not even a police report, indicating which police department she contacted or which one responded, or even where the officer "opened up" the computer. The criminal complaint does state that "Minneapolis police were dispatched" to Kuhrman's Minneapolis home, but a criminal complaint is an assertion, not evidence; it merely details the allegations that establish the elements of the crime charged and that must be proven beyond a reasonable doubt at trial. *See State v. Levie*, 695 N.W.2d 619, 628 (Minn.App.2005) (noting that "[t]he complaint is simply the charging document" and is not evidence for the factfinder's consideration). The prosecutor made a precise factual assertion about venue during his closing argument to the district court, but this cannot change our assessment. The prosecutor claimed proper venue by insisting that Kuhrman "did in fact testify that she had received this e-mail at her home" and that "she had the police out to her home." But an attorney's arguments are not evidence. *State v. McCoy*, 682 N.W.2d 153, 158 (Minn.2004). And the prosecutor's characterization was apparently false, having no support in the transcript of Kuhrman's testimony.

At most, one might speculate from various stray references that Kuhrman was at home in Minneapolis when she opened the e-mail, but the evidence falls far short of excluding all other reasonable possibilities beyond a reasonable doubt. We appreciate that the district court was in the best position to decide disputed facts, but as noted, we do not defer to the factfinder's choice between inferences in circumstantial-evidence cases. On the limited trial record, Kuhrman might have opened the e-mail anywhere in Minnesota.

The state's second argument is that Pierce's e-mail message to Kuhrman constitutes a "continuing offense" that exists from the time of Pierce's sending the e-mail until Kuhrman would have deleted it. On this theory, the state reasons that even if Kuhrman did not initially access the message in Hennepin County, venue was proper because she testified at trial in Hennepin County that she "would be willing ... to look at the computer right now [and we] can pull it up ... [because] [i]t's still there." The first problem with this "continuing offense" argument is that the state cites to no legal authority to support its existence or application here. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971) (declaring that argument based on "mere assertion and not supported by any argument or authorities ... is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection"). The second problem is that the record belies the state's characterization of the communication as being "posted" as an "internet message" on a webpage like one might post "a sign." The record indicates that the MySpace message was delivered like any customary e-mail, not like a general webpage posting. The third problem with the argument is that even if a "continuing offense" doctrine exists *and applies to expand venue in* OFP-violation cases involving e-mail messages, the state has failed to prove that Kuhrman *ever* accessed the e-mail in Hennepin County. Continuing or not, the offense occurred someplace, and the state must prove venue with evidence identifying that place as Hennepin County.

We are aware that our holding invites a form-over-substance criticism. After all, venue restrictions are designed chiefly to "protect[ ] a defendant from the unfairness and hardship that may occur when an accused is prosecuted in a remote place." *Eibensteiner*, 690 N.W.2d at 149 (quotation omitted). And Pierce can hardly claim unfairness wherever in Minnesota his case was tried: By sending the offending message through MySpace e-mail, Pierce must have expected it to reach Kuhrman *wherever* in the state she might have had internet access, which is virtually anywhere. But we are bound to apply the letter of statutory law as we find it without inferring alterations that arise only from the supposed spirit of the law. Minn.Stat. § 645.16 (2008). The legislature has neither codified an implied waiver of venue in this circumstance nor broadly extended venue for electronic-OFP-violation prosecutions under section 518B.01 as it has extended venue for prosecutions for harassment by wireless telephone communications under section 609.79. Applying the general venue statute as we must, we conclude that the state did not prove venue.

### DECISION

Venue to prosecute an alleged OFP-violator is proper in the county from which the sender mailed the electronic message or the county in which the recipient opened it. But because the state did not prove that Hennepin County was the county from which Pierce sent the e-mail or in which Kuhrman received it, we reverse.

**Reversed.**